RAILROAD COMMISSION OF TEXAS et al. v. TEXAS & P. RY. CO. et al.

(Court of Civil Appeals of Texas. Austin. Oct. 11, 1911. Rehearing Denied Nov. 15, 1911.)

1. CARRIERS (§ 10*)—REGULATION—"SYSTEM OF BOOKKEEPING"—"BOOKKEEPING."

The system of bookkeeping, which the Railroad Commission is empowered to prescribe for carriers doing an intrastate business, and by Rev. St. 1895, art. 4571, is not limited to a record of facts, but includes assumed facts based on theory, opinion, or supposed averages.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*

For other definitions, see Words and Phrases, vol. 1, p. 842.]

2. CARRIERS (§ 10*) — REGULATION — "BOOKKEEPING."

An order of the state railroad commission requiring railroads to divide their expense accounts into five primary accounts, and requiring such primary accounts to be divided into

123 subaccounts, following the system of bookkeeping prescribed by the Interstate Commerce Commission, and requiring that a few of the subaccounts should again be subdivided so as to apportion expenses between freight and passenger traffic and between state and interstate traffic, was a compliance with Rev. St. 1895, art. 4571, authorizing the Railroad Commission to prescribe a system of bookkeeping for railroads.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

3. CARRIERS (§ 10*)—REGULATION—SYSTEM OF BOOKKEEPING.

The order of the Railroad Commission requiring division of the expense account of railroads in accordance with the method prescribed by the Interstate Commerce Commission, and in addition requiring certain of the subaccounts to be divided so as to apportion the expense between freight and passenger and between state and interstate commerce on the ton mile basis, was not objectionable as unreasonable because such system would not give a result mathematically correct; it being sufficiently correct and close to satisfy the purpose required, viz., to enable the commission to fix reasonable freight and passenger rates for intrastate traffic.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

4. CARRIERS (§ 10*) — REGULATION — SYSTEM OF BOOKKEEPING.

An order of the Railroad Commission requiring railroads to divide their expense accounts into five primary accounts, these in turn to be divided into 123 subaccounts, exactly following the system prescribed by the Interstate Commerce Commission, and then requiring certain of the subaccounts to be again subdivided so as to apportion the expense between freight and passenger, and between state and interstate commerce, was not objectionable as in conflict with the system prescribed by the Interstate Commerce Commission.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

5. CARRIERS (§ 10*)—RAILROADS—REGULATION—BOOKKEEPING—INTERSTATE COMMERCE.

Where a system of railroad bookkeeping prescribed by the State Railroad Commission is only partially in conflict with the method prescribed by the Interstate Commerce Commission, the state system is for that reason invalid only to the extent of the conflict.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

6. COMMERCE (§ 13*) — REGULATION—INTRASTATE AND INTERSTATE COMMERCE.

While the regulation of interstate commerce has been delegated to the federal government, and any act of the state interfering therewith, or placing an undue burden thereon, is void, the regulation of intrastate commerce is reserved to the state, and any act of Congress interfering therewith, and not necessary to the regulation of interstate commerce, is equally void.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 7; Dec. Dig. § 13.*]

7. COMMERCE (§ 58*)—INTERSTATE COMMERCE—INTRASTATE COMMERCE — REGULATION — BOOKKEEPING.

Since bookkeeping by railroads engaged in both interstate and intrastate commerce does not of itself constitute commerce, the delegation to Congress of the exclusive right to regulate interstate commerce does not preclude the state from prescribing a system of bookkeeping to be followed by railroads within the state for the purpose of apportioning expenses between freight and passenger traffic, and between intrastate and interstate commerce, to afford a basis for the establishment of intrastate rights.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86; Dec. Dig. § 58.*]

8. COMMERCE (§ 58*) — REGULATION — BOOKKEEPING.

Act Feb. 25, 1909, c. 193, 35 Stat. 648 (U. S. Comp. St. Supp. 1909, p. 1165), declaring that it shall be unlawful for carriers engaged in interstate commerce to keep any other accounts, records, or memoranda than those prescribed by the Interstate Commerce Commission, does not prevent the states from prescribing additions to the system specified by the Interstate Commerce Commission to supply deficiencies therein in so far as necessary to enable the states to apportion expenses between freight and passenger traffic and interstate and intrastate commerce, so as to afford a basis for the establishment of intrastate rates.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 58.*]

9. CARRIERS (§ 10*)—REGULATION—BOOKKEEPING—SYSTEM.

An order of the Railroad Commission requiring carriers engaged in interstate and intrastate commerce, in addition to the method of bookkeeping prescribed by the Interstate Commerce Commission, to divide their expense accounts so as to make an apportionment between freight and passenger and between state and interstate traffic, was not objectionable as imposing too great a burden on interstate traffic, in that the apportionment of expense charged to interstate traffic was too great.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

10. CARRIERS (§ 10*) — REGULATION — BOOKKEEPING.

A circular issued by the Railroad Commission, requiring the expense accounts of railroads, engaged in both interstate and intrastate commerce, to be divided in accordance with the method prescribed by the Interstate Commerce Commission, and in addition to show an apportionment of expenses between freight and passenger and state and interstate traffic, on the ton mile basis, was authorized by Rev. St. 1895, art. 4571, providing that the commission shall cause to be prepared suitable blanks with questions calculated to elicit all information concerning railroads and as often as it may be necessary to furnish such blanks to each railroad.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 10.*]

11. CARRIERS (§ 18*) — REGULATION — RAILROAD COMMISSION—INJUNCTION.

Rev. St. 1895, art. 4571, provides that the Railroad Commission may prescribe a system of bookkeeping to be observed by railroads, and also declares that the commission shall cause to be prepared suitable blanks with questions calculated to elicit all information concerning railroads, and shall furnish such blanks to railroads as often as may be necessary. *Held* that, notwithstanding a circular issued by the Railroad Commission prescribing a system of bookkeeping was objectionable and subject to injunction, it was improper for the court to enjoin the commission from issuing any further circular or order that might require complainants to keep or maintain any system of bookkeeping which required a separation of their expenses between passenger and freight

business and state and interstate commerce on any theoretical basis.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 18.*]

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by the Texas & Pacific Railway Company and others against the Railroad Commission of Texas and others. Judgment for complainants, and defendants appeal. Affirmed in part, and reversed and rendered in part.

Appellees brought this suit in the district court of Travis county to restrain appellants from putting into effect the orders of the Railway Commission of Texas, prescribing a system of bookkeeping to be observed by appellees, and requiring them to make certain reports to said commission. The purpose of the commission in making these orders was to ascertain, as nearly as practicable, the expenses incurred by the railway companies on traffic within this state, and on such freight and passenger traffic separately, in order that it might be enabled to properly discharge the duty incumbent on it to fix reasonable rates for such traffic.

As much of the expenses of railroads are incurred for the common benefit of both their state and interstate traffic, and for both freight and passenger traffic, and cannot be separated, except by charging a proportion of said expenses to each, said commission, in circular A2, ordered the railways in this state to make an apportionment of such common expenses on the basis set out in said order.

First, by general rules, the railway companies, in making such distribution of expenses, were required to reduce all traffic to loaded freight cars, thus securing, as it were, a common denominator. One passenger car, or five empty freight cars were to be taken as the equivalent of two loaded freight cars; nonrevenue trains, when engaged in a particular service, to be charged to such service on the basis prescribed for other trains.

By said circular A2, the expense account was divided into five primary accounts, viz., Maintenance of Way and Structure, Maintenance of Equipment, Traffic Expenses, Transportation Expenses, and General Expenses. These five primary accounts were divided into 123 subaccounts. In all of this the system of bookkeeping prescribed by the Interstate Commerce Commission was followed literally. A few of the subaccounts were again subdivided; but this, we think, is immaterial. The material difference between the system of bookkeeping prescribed by the Texas Commission and that prescribed by the Interstate Commission is that the former requires an apportionment of expenses between freight and passenger and between state and interstate traffic, while the latter does not.

Loaded car miles is the basis adopted for the apportionment of expenses coming under the head of "Maintenance of Way and Structures." As illustrative of this, take the item of ties. The books of a railroad company show that the total number of miles traveled by all passenger coaches during a given period is equal to say 5,000 miles for one passenger coach; that is to say, 5,000 passenger car miles. The books further show 15,000 car miles against loaded freight cars and 12,000 car miles against empty freight cars. These reduced to loaded freight car miles, as directed in the general rules, would give 10,000 loaded car miles for passenger and 20,000 loaded car miles for freight traffic. The expense for ties during this period has been, say, $6,000. This would be apportioned in the proportion of 10,000 to 20,000, or one-third to passenger and two-thirds to freight traffic. Having ascertained from these figures that $2,000 of this tie account should be charged to passenger account, the order of the commission would require this to be further apportioned between state and interstate, for the common benefit of which said ties were used, on the ton mile basis. This illustration will serve to show the practical working of the system prescribed by the Railroad Commission, though different bases are adopted for the different primary accounts.

The material objection to the orders of the commission, as set out in appellees' original and supplemental petitions, which cover 454 pages of the record, are substantially as follows:

(1) That said circular A2 does not prescribe "a system of bookkeeping as that phrase is used in article 4571, R. S. 1895.

(2) That the requirements of said order are unreasonable and unjust to appellees.

(3) That the system of bookkeeping prescribed by the Texas Railroad Commission is in conflict with the system prescribed by the Interstate Commerce Commission.

It was shown that each of the appellees was engaged in interstate traffic, as well as in traffic exclusively within this state.

The case was tried before the court without the intervention of a jury, and judgment was rendered in favor of appellees. The findings of the court sustained each of appellees' contentions above set out.

Appeal having been perfected, the case is now before us for our decision. The record is voluminous, embracing 1,368 pages; but we have given it a patient, and we trust a thorough, investigation.

Jewel P. Lightfoot, Atty. Gen., James D. Walthall, Asst. Atty. Gen., and R. E. Crawford, Asst. Atty. Gen., for appellants. Baker, Botts, Parker & Garwood and Andrews, Ball & Streetman, for appellees.

JENKINS, J. (after stating the facts as above). [1] The act creating the Railroad Commission empowered it to prescribe a system of bookkeeping to be observed by all railroads subject to said act. Art. 4571, R. S. 1895. The first issue is: Do the orders complained of prescribe "a system of bookkeeping"?

The definition of bookkeeping insisted upon by appellees admits of the recordation of facts only, and excludes the record of all assumed facts based upon theory, opinion, or supposed averages. By facts they mean those things that are mathematically certain, and say that a correct system of bookkeeping should show with mathematical certainty the true status of the business. We know of no such definition of bookkeeping in the dictionaries or in the law books. The definition cited by appellees from the Century Dictionary, Words & Phrases, and Encyclopedia of Law is: "The act of recording, in a systematic manner, the transactions of merchants, traders and other persons engaged in pursuits connected with money." The orders of the Railroad Commission meet the requirements of this definition. They prescribe a system with perspicuity and minuteness of detail for keeping the expense account of railroads, and the manner in which the same is to be apportioned. Whether such system obtains accurate results may be pertinent to the inquiry as to whether it is reasonable and just, but not to the inquiry as to whether or not it is "a system of bookkeeping."

[2] Appellees quote from Western Assurance Co. v. Altheimer, 58 Ark. 565, 25 S. W. 1067, wherein the court says that bookkeeping may be called an exact science. To the extent that it requires certain items to be charged in a certain manner, for instance, that all debit items must be charged to the debit account, and all credit items to the credit account, bookkeeping is an exact science; but not in the sense that all such items must be mathematically correct in amount, or capable of mathematical ascertainment. For instance, a merchant, desiring to know how his business stands, takes an inventory of goods on hand, and lists them at what he estimates them to be worth in their then condition. The extent to which they are shop-worn or have gone out of style, the condition of crops, and many other things may enter into his estimate. He cannot know to a mathematical certainty their present cash value, and yet he is bookkeeping, and that in a systematic manner. If a farmer, or owner of a mill or factory, should keep books correctly, he would charge off the wear and tear of his tools and machinery; but in doing so, he would not be recording a "fact," as that term is used by appellees, but only his opinion as to such fact. Appellees praise the system of bookkeeping prescribed by the Interstate Commerce Commission, and yet we find that under that system the railroads are required to charge to expense account the depreciation of work equipment, locomotives, and cars, and that according to an arbitrary rule established by the Interstate Commission. And. under that system, where an officer has supervision of two departments, his salary must be apportioned equally between such departments, without reference to the time actually given to each of such departments. Contributions to hospitals are to be arbitrarily apportioned, "25 per cent. to Maintenance of Way, 25 per cent. to Maintenance of Equipment, and 50 per cent. to Transportation Expenses."

As illustrative of appellees' criticism of the system prescribed by the Railroad Commission, appellees' expert witnesses say, in substance, that while the transportation of one passenger coach or five empty freight cars may, in a particular instance, be equivalent to the transportation of two loaded freight cars, yet, by reason of the fact that passenger and empty freight cars and car loads differ greatly, in many instances, this would not be true. All of which objections might be as well urged against a uniform passenger or freight rate. According to this argument, the Railroad Commission could not adopt a just rate which would apply to an entire road, but must fix the same for each mile, based upon the grade and curvature, and must even take into consideration the wind which "bloweth where it listeth." They further say that much of the expense of maintaining a road does not depend upon the amount of the traffic, and therefore that basis should not be used. That ties would rot, though no cars be run over them. Very true, but roadways are maintained for the benefit of the traffic which passes over them, and the traffic should bear the expense of such maintenance; and, as between the freight and passenger traffic, the apportionment should be made upon some basis supposed to be equitable.

In Railway Co. v. Tompkins, 176 U. S. 167, 20 Sup. Ct. 336, 44 L. Ed. 417, the court said: "In the very nature of the case, some rule must be adopted for charging to each of them their fair and equitable proportion of the common expense. Of necessity it must proceed upon average conditions commonly known or shown to exist, and it argues nothing to say that it does not fully apply to this or that exceptional instance."

Under the system prescribed by the Railroad Commission the apportionment is made in proportion to the use. The system prescribed by the Commission may not be the best possible, but we think it is "a system of bookkeeping," as that phrase is used in the statute, for which reason we sustain appellants' assignment as to this point.

[3] 2. The second issue herein is as to whether the system of bookkeeping prescribed by the commission is unreasonable and unjust to appellees.

Appellees contend that said system is

unreasonable because no system can be devised by which the expenses of freight and passenger, and state and interstate, traffic can be separated, the one from the other. In support of their contention they refer to such authorities as Woodlock on "Anatomy of the Railroad Report and Ton Mile Cost," and Noyes on "American Railroad Rates." These authorities go only to the extent that such division cannot be made with mathematical precision. This is obviously true. Speaking of the ton mile basis, which is the basis adopted by the Railroad Commission for the division of freight operating expenses between state and interstate traffic, Woodlock says: "This method is at least as good as any other for the purpose of comparison, and of course it is only for such purposes that there is any need of division at all. It must, however, be understood that absolute results are not claimed, because that is obviously unobtainable. The process which we have outlined is only sufficiently correct and sufficiently close to the general principles involved to yield good comparative results."

We think the entire system prescribed by the commission is "sufficiently correct and sufficiently close * * * to yield good comparative results," and thereby enable the commission, by a comparison of such expense, to fix reasonable freight and passenger rates—a duty placed upon them by law. The power to prescribe "a system of bookkeeping" conferred upon the commission implies a discretion on the part of the commission as to what system it will prescribe, and it should be clearly shown that it has abused such discretion before its acts in this regard are nullified by the courts. It is not sufficient to show that such system is not the best possible system, but it must be made to appear that it is unreasonable and unjust to the complainants. Article 4566, R. S. 1895. Not only can no system be devised by which the expenses between state and interstate and freight and passenger traffic can be separated with absolute certainty, but no system can be devised by which the expenses of a railroad, as a whole, can be so known. Such expenses include the depreciation of roadways and rolling stock, which is necessarily a matter of estimate —of opinion. The logical conclusion of appellees' position would be that no system of bookkeeping could possibly be devised for railroad business. The absurdity of the deduction shows the falsity of the premises.

Railroad companies, in suits to enjoin freight or passenger rates fixed by state commissions, have been compelled to present some theory for the division of expenses between such traffic. A number of such suits have been brought, and the railroad companies, in every such case, have furnished evidence which enabled the courts to make such apportionment with such reasonable certainty as to form the basis of a

140 S.W.—53

judgment. Shepard v. Railway Companies (C. C.) 184 Fed. 765; Railway Co. v. Love (C. C.) 177 Fed. 493; In re Arkansas Rate Cases (C. C.) 163 Fed. 141; Railway Companies v. Hadley (C. C.) 168 Fed. 317; Railway Co. v. Smith (C. C.) 110 Fed. 473; Railway Co. v. Thompkins (C. C.) 90 Fed. 363; Railway Companies v. Keyes (C. C.) 91 Fed. 47; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

In Shepard v. Railway Co. (C. C.) 184 Fed. 801, supra, speaking of the findings of the master, which were adopted by the court, the court said: "He divided the freight and passenger costs respectively between the interstate commerce and the intrastate commerce, and found that the cost of intrastate freight business was $1,355,273.82, and the cost of intrastate passenger business was $863,325." In that case there was conflict in the evidence as to the best basis for the division of such expenses, but there was no pretense that the system adopted gave absolutely correct results. 184 Fed. 811. In Railway Co. v. Hadley, supra, the court said: "Each basis for accounting has its defects, but they are minor and not controlling." See, also, 168 Fed. 348. In Railway Co. v. Love (C. C.) 177 Fed. 495, supra, the court said: "Objections may be made to all rules for apportioning the value and income and expenses of operation to meet the issues in a particular case. Mathematical precision in matters so complex, and of so many elements, is not to be expected; but a court whose jurisdiction is invoked is not for that reason relieved of its duty to get as near an accurate result as the proof permits." Appellees' expert witnesses in this case do not urge any particular system as being correct, but deny the correctness of all systems. Mr. Van Vleck says: "Any basis that I might suggest would probably not reflect the actual conditions." Mr. Cottingham says: "You will find as many theories as accounting officers." While the theories are not so numerous as this, had the commission prescribed either of several theories advocated by experts and competent authorities on this subject, we can see no reason why we should pronounce a system of bookkeeping on such basis either unreasonable or unjust to appellees.

Mr. Cottingham says that he never heard of any railroad in the United States attempting to make a division of expenses between state and interstate traffic. In the case of Shepard v. Railway Co., referred to supra, the court, speaking of the basis for such division adopted in that case, said that the evidence showed this basis had been used by the companies involved in that suit for their own information, for some time before the institution of said suit, and that it had at one time received the approval of the Interstate Commerce Commission. 184 Fed. 813. Speaking of a division of freight and passenger expenses, Mr. Cottingham said: "For

rate making purposes it is desirable to ascertain the cost of your freight and passenger traffic." Mr. Van Vleck admits that such information is valuable for statistical purposes. That is just why the commission prescribed a system of bookkeeping requiring an apportionment of expenses. It wanted statistics for rate making purposes. These statistics, to be of any value to the commission, must show an apportionment of expenses between state and interstate and between freight and passenger traffic. The state is not entitled to the profits, nor should it be made to bear the burden, of interstate traffic. The same is true of freight and passenger traffic as between each other. Mr. Cottingham says that a division of expenses is not undertaken by railway companies "as a bookkeeping proposition. That is to say, they do keep books on this proposition, but not as a bookkeeping proposition." The distinction is as clear as mud. It appears that not only do railway companies elsewhere keep such books for their own information, but that at least one of the parties to this suit does so. Mr. Green, general manager of the Trinity & Brazos Valley Railroad Company, said: "We use the train mile basis for dividing expenses on the Trinity & Brazos Valley as between passenger and freight, and that basis was used by the Cotton Belt when I was manager of that road. I do not know as a fact that that basis is used by all the roads in the state."

The federal courts favor the gross revenue basis, but the basis to be adopted in any particular case is a question of fact. As between the revenue basis and the bases prescribed by the Railroad Commission, much might be said in favor of the latter. Take, for instance, the item of ties. The books of the company show that a certain amount has been expended for this item. They also show that, reduced to loaded car miles, the passenger traffic, for the period given, has amounted to one-fourth of the freight traffic. The books further show that the gross revenue from passenger traffic during this period was one-third of that from the freight traffic. Why would not the apportionment upon the basis of comparative use be as equitable as that made upon the comparative revenue? Might it not be that the revenue derived from passenger traffic is comparatively too much, for the reason that the passenger rates are comparatively too high, or vice versa? Why should the gross revenue be made the basis for the division of expenses, rather than the expenses the basis for division of revenue? To make the gross revenue the correct basis for proportioning expenses, we must assume that, as between passenger and freight traffic, the rates are properly adjusted. However, the comparative merits of different systems for the apportionment of expenses is not involved in this suit. Should a railway company complain of the passenger or of the freight rates fixed by the commission, and should the

commission attempt to justify such rate from the statistics furnished under its system of bookkeeping, such railroad company would be at liberty to show, if it could, that the statistics were not founded upon the most correct theory. All we decide in' this case as to the point now under discussion is that it has not been made to appear unreasonable that the appellees should furnish the commission the statistics required by the system of bookkeeping prescribed by said commission.

The appellees say that the system of bookkeeping prescribed by the commission is unjust by reason of the increased expenses that will be entailed upon them by such system. It is not made to appear that the additional expense will be unreasonable in proportion to their income. In fact, they neither plead nor prove their income, gross or net. We see no reason why this system should be unduly expensive. They are required by the Interstate Commerce Commission to record all of the items of expenses mentioned in the order of the Railroad Commission, and, to carry out said order, they have only to apportion said expenses, as directed. Mr. Van Vleck says: "It is a fact that when a bookkeeper enters upon his books the number of trains, the number of cars, loaded and empty, and other facts necessary to a correct record, any competent person can make his own statistics from the books, upon any basis he may wish to apply." Presumably the bookkeepers of the railway companies are competent persons, and they are required by the orders complained of to apply the basis prescribed by the commission—only this and nothing more.

[4] 3. The third material issue in this case is as to whether the system of bookkeeping prescribed by the Railroad Commission of this state is in conflict with the system prescribed by the Interstate Commerce Commission.

A number of the expert witnesses for appellees declare that they do not understand the orders of the Railroad Commission. We are inclined to attribute their declarations that conflict exists between the system prescribed by the Railroad Commission and that prescribed by the Interstate Commerce Commission to this failure on their part to properly construe the orders of the Railroad Commission. We have been unable to discover any material conflict between the two. There can be no conflict as to the partition of expenses between state and interstate, and freight and passenger, traffic, for the reason the Interstate Commerce Commission does not deal with these subjects at all. On the other hand, except by way of inducement, wherein it adopts the interstate commerce system, the Railroad Commission does not deal with any other subject.

[5] Should such conflict be discovered as to any particular item, if this be good cause for setting aside the order of the commission pro tanto, it would not justify setting aside

the entire system, as was done by the judgment of the trial court in this case. U. S. v. Cuba, 2 Hughes, 491, Fed. Cas. No. 14,898.

The Railroad Commission, in prescribing a system of bookkeeping to be observed by the railroads in Texas, exercised legislative authority conferred upon it by the Constitution and laws of this state; and its acts in this regard are entitled to the same favorable presumption as would be accorded to an act of the Legislature. "A statute enacted in execution of the reserved power of the state is not to be regarded as inconsistent with an act of Congress, passed in the execution of a clear power under the Constitution, unless the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or stand together." Railway Co. v. Haber, 169 U. S. 623, 18 Sup. Ct. 488, 42 L. Ed. 881.

[6] While the regulation of interstate commerce has been delegated to the federal government, and any act of a state interfering therewith, or placing an undue burden thereon would be void, on the other hand, the regulation of intrastate commerce is a power reserved to the state, and any act of Congress interfering therewith, and not necessary to the regulation of interstate commerce, would be equally void.

[7] Bookkeeping is not interstate commerce; it is not commerce at all. That Congress had the right, as incident to its power to regulate interstate commerce, to authorize the Interstate Commerce Commission to adopt and enforce, in so far as the same related to interstate commerce, any just and reasonable system of bookkeeping that it saw fit, to the exclusion of all others, we do not doubt, but that Congress, or the Interstate Commerce Commission, can prevent a sovereign state from adopting and enforcing any just and reasonable system of bookkeeping that it may see fit, and which does not interfere with interstate commerce, is a doctrine to which we do not assent. The federal courts have gone very far in their limitation upon state rights, but we do not think that they have ever gone as far as contended for by appellees in this case; and if such doctrine has been declared by any court, below the Supreme Court of the United States, we are unwilling to follow it. Even the apostle of the New Nationalism declares that the states have rights which the federal government ought to respect.

[8] The appellees rely upon that clause in the act of Congress which declares that it shall be unlawful for carriers engaged in interstate commerce to keep any other accounts, records, or memoranda than those prescribed by the Interstate Commerce Commission. Fed. Stat. Ann. Supp. 1909, p. 273 (Act Feb. 25, 1909, c. 193, 35 Stat. 648 [U. S. Comp. St. Supp. 1909, p. 1165]). We construe this to refer exclusively to interstate commerce. It ought not to be presumed that Congress intended to do that which it had no legal right to do. Even if Congress had the right to deprive a state of the power to require a system of bookkeeping which is necessary in order for it to fix reasonable freight and passenger rates on traffic wholly within its borders—a thing which Congress cannot do—it ought not to be presumed, in the absence of language clearly and unequivocally to that effect, that, in authorizing the Interstate Commerce Commission to prescribe a system, useful to the federal government, but useless to the states, it intended to prevent the states from prescribing additions to its system which would supply the deficiency.

The order of the Interstate Commerce Commission itself recognizes a probable necessity for additional accounts. Section 4 of said order is as follows: "It is further ordered, that any such carrier or any receiver or operating trustee of any such carrier may subdivide any primary account in said first revised issue established as may be required for the purposes of any such carrier or of any receiver or operating trustee of any such carrier; or may make assignment of the amount charged to any such primary account to divisions, to its individual lines, or to states; provided, however, that a list of such subprimary accounts set up or such assignments made by any such carrier or by any receiver or operating trustee of any such carrier be first filed in the office of the division of statistics and accounts of this commission subject to disapproval by the commission."

Appellees say "the permission of the Interstate Commerce Commission to keep these accounts has never been obtained." It does not appear that such permission has been applied for. No one but the railroad companies would be authorized to make such application.

[9] 4. The appellees say that the system of bookkeeping prescribed by the commission puts too great a burden on interstate traffic, by which they mean that the proportion of expenses charged, under this system, to interstate traffic, is greater than it should be. If this be true, we do not see how the keeping of such accounts can burden interstate traffic, inasmuch as the Railroad Commission does not propose to fix interstate rates. If the statistics to be furnished by this system should in the future be used in fixing state rates, the fact that too small a proportion of the expenses shown by this system was charged against intrastate traffic, if such could be shown to be a fact, and the net income had thereby been made to appear larger than it really was, might be urged in a suit to enjoin such rate. But until such suit is brought the issue of a burden, great or small, on interstate or intrastate rates as a whole, or on freight or passenger rates separately, will not be presented. Aside from the additional cost of proportioning the expense, no such issue is presented in this case.

[10] 5. In addition to the power to pre-

scribe "a system of bookkeeping" conferred upon the Railroad Commission by Article 4571, R. S. 1895, said article provides that: "The said commission shall cause to be prepared suitable blanks with questions calculated to elicit all information concerning railroads, and, as often as it may be necessary, furnish said blanks to each railroad." We sustain circular A4 under this provision of the statute.

[11] We do not think that the judgment of the trial court should, in any event, be sustained as to the future action of the commission. By said judgment the Railroad Commission was enjoined from issuing "any further circular or order that may require or compel complainants to keep or maintain any system of bookkeeping which requires a separation of the expense of conducting their freight and passenger business, and their state or interstate business on any theoretical basis," and "perpetually enjoining and restraining it from ordering complainants and interveners, or either of them, to keep any system of bookkeeping other than the actual facts pertaining to the receipt and disbursement of said business." Inasmuch as it is impossible, in many instances pertaining to the receipt and disbursement of such business, to ascertain the actual facts relating to the expense, such judgment, if sustained, would amount to the repeal of the statute on this subject. If it was true, as contended by the appellees, that the basis for the portion of the expenses complained of herein was false, unreasonable, and unjust, that would be no reason why the commission might not, in the future, adopt some basis that was true, reasonable, and just.

Circulars A5 and A6 having been abandoned by appellants on the trial hereof, and said circulars having been canceled by the commission subsequent to said trial, as appears from the admission of counsel, the judgment of the trial court as to said circulars A5 and A6 is affirmed. For the reasons herein stated, the judgment of the trial court as to circular A2, prescribing a system of bookkeeping to be observed by appellees, and circular A4, requiring the appellees to make certain reports as therein specified, is reversed, and judgment will here be rendered for appellants.

Affirmed in part, and in part reversed and rendered.